UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LATRICE WALKER, ET AL.    CIVIL ACTION NO. 25-0258

VERSUS        JUDGE S. MAURICE HICKS, JR.

JULIAN WHITTINGTON, ET AL.  MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court are three Motions for Judgment on the Pleadings filed by Defendant Jennifer Grimm ("Nurse Grimm"), Defendant Jennifer Johnson ("Nurse Johnson"), and Defendant Molli Lyles ("Nurse Lyles"), (collectively, the "Nurse Defendants"). See Record Documents 33, 34, & 35. Plaintiffs Latrice Walker and Holly Rouse (collectively, "Plaintiffs") oppose all three Motions. See Record Documents 44, 45, & 46. The Nurse Defendants replied. See Record Documents 51, 52, & 53. For the reasons set forth below, all three Motions are **GRANTED IN PART AND DENIED IN PART**. The Motions are **GRANTED** with respect to the § 1983 inadequate medical care claim and the punitive damages claim. These claims are **DISMISSED WITH PREJUDICE**. The Motions are **DENIED WITHOUT PREJUDICE** as to the state law negligence claim. This claim is **STAYED** pending resolution of the Medical Review Panel proceeding.

**BACKGROUND**

On or about March 2, 2024, the Bossier City police arrested Jerry D. McCoy ("McCoy") for "disturbing the peace by intoxication, having no lights on his bicycle, resisting, being a fugitive from the Bossier Parish Sheriff, and having an outstanding failure to appear bench warrant." Record Document 27 at ¶ 7. At the time of his arrest,

McCoy had alcohol on his person and was intoxicated. <u>See id.</u> On or about March 3, 2024, Bossier City police transported McCoy to the Bossier Parish Maximum Security Facility ("Bossier Max") and allegedly informed the deputies at Bossier Max of his alcohol abuse history. <u>See id.</u> at ¶ 8. Plaintiffs claim that no medical assessment for symptoms of alcohol withdrawal was provided, despite the medical unit's alleged knowledge of McCoy's potential for alcohol withdrawal. <u>See id.</u> at ¶ 9. Later that day, he was assigned to HT11 and then moved to cell F-108. <u>See id.</u>

On March 4, 2024, McCoy was taken to sick call, but Plaintiffs allege no protections against alcohol withdrawal were provided. <u>See id.</u> at ¶ 10. McCoy supposedly reported heavy daily liquor use, and Nurse Lyles, along with the nursing staff, allegedly noticed a tremor. <u>See id.</u> McCoy had a CIWA-Ar assessment of 2, and Plaintiffs assert that Nurse Lyles's documented nursing plan consisted of daily monitoring; however, the correctional staff was not notified of this plan. <u>See id.</u>

On March 5, 2024, Officer Danny Soliz ("Officer Soliz") moved McCoy from F-108 to cell G-113 due to McCoy's perception of having enemies. <u>See id.</u> at ¶ 11. Plaintiffs claim he repeatedly yelled for help and was sweating and nervous. <u>See id.</u> Officer Soliz, Officer Blake Hines ("Officer Hines"), Officer Neysa Washington ("Officer Washington"), Officer Ryan Kirkhart ("Officer Kirkhart"), Lieutenant Mark Lyons ("Lt. Lyons"), and Officer Hunter Jenkins ("Officer Jenkins"), (collectively, the "Night Shift Deputies"), responded and placed McCoy in isolation. <u>See id.</u> Plaintiffs allege that the Night Shift Deputies noted McCoy "could not say where he was[,]…was agitated, profusely sweating, heavily breathing with delusions, hallucinating and had a fever." <u>Id.</u> He was displaying symptoms of alcohol withdrawal and delirium tremens, which Lt. Lyons allegedly recognized. <u>See id.</u>

Additionally, McCoy began experiencing seizures, delirium tremens, and other bizarre behavior. See id.

Plaintiffs argue the Night Shift Deputies did not provide any medical assistance "although each was [supposedly] aware of McCoy's serious medical condition arising from alcohol withdrawal." Id. They maintain the Night Shift Deputies failed to transport him to a medical facility, which they claim is required by written policy. See id. Additionally, Plaintiffs allege the Night Shift Deputies "failed to notify any medical personnel of [his] alcohol withdrawal symptoms which was required to be done by the Sheriff's written policy." Id.

Plaintiffs argue the standard of care with respect to alcohol withdrawal is well known in the corrections industry. See id. at ¶ 12. They point to Fletcher v. Whittington, a previous settlement agreement, dated October 22, 2022, in which Defendant Julian Whittington ("Sheriff Whittington") agreed to implement medical policies and training for correctional staff on alcohol withdrawal. See id. They allege Sheriff Whittington was aware of the need for the policy and training but failed to fully implement the agreement. See id.

Beginning early on March 6, 2024, McCoy began hallucinating again and speaking in a confused and disoriented matter. See id. at ¶ 13. He was moved to cell H-101. See id. In H-101, he began hiding behind furniture for protection against imagined enemies and swinging his blanket as though defending himself. See id. Lt. Lyons entered the room and allegedly applied chemical spray to McCoy. See id. Plaintiffs claim no medical assistance was provided. See id. McCoy was later moved to cell HT7. See id. Plaintiffs assert that the Night Shift Deputies knew McCoy was experiencing a serious case of alcohol withdrawal, thereby making the situation a medical emergency. See id. Plaintiffs

argue no nurses were on duty yet, no one summoned medical assistance, and no one sought medical consultation, which allegedly went against established training and policy. See id. They submit that McCoy should have been transported to an appropriate facility when his symptoms were first observed. See id.

Plaintiffs aver that Bossier Max's written procedures required the deputies to request EMS to come to the facility and/or to transport the prisoner to a medical facility under the circumstances when confronted with a medical emergency. See id. at ¶ 14. They argue this protocol should have been followed beginning around 7:00 p.m. on March 5, 2024; however no medical help was requested, McCoy was not placed on a detox protocol, and guards were not made aware that the failure to provide detoxification protocol would risk serious injury or death. See id.

Plaintiffs allege that Nurse Lyles had intended for McCoy to be placed on an alcohol withdrawal protocol, but the correctional officers were not notified of this plan. See id. at ¶ 15. Instead of providing medical assistance, McCoy was placed in isolation and later handcuffed behind his back. See id. at ¶ 18. Plaintiffs claim cell HT7 was abnormally hot due to a malfunctioning air system, and the correctional officers were aware of this malfunction. See id. Plaintiffs allege that none of the widely known and accepted medical procedures were provided by the correctional officers. See id. at ¶ 19. Additionally, they claim no jailer or nurse checked on McCoy any more than once an hour, and he was left unattended in the isolation room in the restraint chair for more than an hour. See id.

The Nurse Defendants reported for duty around 5:30 a.m. on March 6, 2024 and supposedly became aware of McCoy's serious medical condition shortly thereafter. See id. at ¶ 20. Plaintiffs claim the Nurse Defendants witnessed him shaking and seizing. See

id. Instead of providing immediate emergency medical care, Plaintiffs assert that the Nurse Defendants returned to their normal duties for sick call. See id. Around 8:30 a.m., Nurse Lyles attempted to call emergency medical help but supposedly only after she saw McCoy was unresponsive and no longer breathing. See id. Nurse Lyles allegedly expressed to others around 6:00 a.m. that McCoy needed to be transported to a medical facility; however, transport was not called until it was too late. See id. McCoy was pronounced deceased around 9:30 a.m.[1] See id. at ¶ 25.

Officer Jessie Bearden ("Officer Bearden"), Lieutenant Quinton Black ("Lt. Black"), Seargeant John Carroll ("Sgt. Carroll"), and Seargeant Buck Boudreaux ("Sgt. Boudreaux"), (collectively, the "Day Shift Deputies"), came on duty around 5:30 a.m. and allegedly became aware of McCoy's alcohol withdrawal and other serious medical symptoms but failed to take appropriate action. See id. at ¶ 21. Plaintiffs argue Lt. Lyons informed Lt. Black around 5:00 a.m. of McCoy's serious medical condition, and Lt. Lyons recommended medical treatment and examination; however, Plaintiffs claim no one acted. See id. at ¶ 23. Furthermore, Plaintiffs contend that Lt. Black did not inform the medical staff of McCoy's condition. See id.

Plaintiffs submit that the Day Shift Deputies only attempted to discharge McCoy from their custody to save Sheriff Whittington the expense of transporting him for emergency medical services. See id. ¶ 24. Plaintiffs allege that Sheriff Whittington, in conjunction with the Bossier Parish Police Jury ("BPPJ"), has a practice or policy of saving

---

[1] In Paragraph 19 of Plaintiffs' First Amended Complaint, they allege McCoy died between 8:30-8:45 a.m.; however, this timeline is contradicted by allegations made later on in paragraphs 20 and 25. After reviewing the First Amended Complaint, in its entirety, and the arguments made in briefing, the Court concludes this series of events surrounding McCoy's death on March 6, 2024, occurred between 8:30-9:30 a.m. EMS transportation was likely called around 8:30 a.m., and McCoy was pronounced deceased around 9:30 a.m.

the expense of providing medical services to inmates by undercutting and withholding medical care. See id.

Plaintiffs assert five causes of action in their First Amendment Complaint: (1) § 1983 Failure to Provide Medical Care against the Nurse Defendants and Officer Soliz, Officer Hines, Officer Washington, Officer Kirkhart, Lt. Lyons, Officer Jenkins, Lt. Black, Sgt. Boudreaux, Sgt. Carroll, and Officer Bearden (collectively, the "Deputy Defendants") in their individual capacities; (2) § 1983 Failure to Provide Medical Care against Sheriff Whittington and BPPJ, in their official capacities; (3) Louisiana State Law Fault and Negligence against all Defendants; (4) Americans with Disabilities Act ("ADA") against Sheriff Whittington and BPPJ; and (5) Rehabilitation Act of 1973 ("RA") against Sheriff Whittington and BPPJ. See id. at ¶¶ 26–50.

## LAW AND ANALYSIS

### I. Pleading and Dismissal Standards.

Federal Rule of Civil Procedure 8(a)(2) governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action,"

the pleading does not meet the standards of Rule 8(a)(2). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "In evaluating whether a plaintiff's complaint survives a motion for judgment on the pleadings, [the court] is limited to reviewing: '(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matter for which judicial notice may be taken under Federal Rule of Evidence 201.'" <u>Jordan Props., Ltd. v. City of Cleveland, Miss.</u>, No. 23-60625, 2024 WL 3771453, at *1 (5th Cir. Aug. 13, 2024) (quoting <u>Walker v. Beaumont Indep. Sch. Dist.</u>, 938 F. 3d 724, 735 (5th Cir. 2019)).

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." <u>Doe v. MySpace, Inc.</u>, 528 F.3d 413, 418 (5th Cir. 2008); <u>see</u> <u>Jordan Props.</u>, 2024 WL 3771453, at *1. Under the Rule 12(b)(6) standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading is deficient. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A court does not evaluate a plaintiff's likelihood for success but instead determines whether a plaintiff has pleaded a legally cognizable claim. <u>See</u> <u>Thompson v. City of Waco</u>, 764 F. 3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the <u>Iqbal</u> and <u>Twombly</u> standards to

survive such a motion. See id. at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

## II. Qualified Immunity.

"Qualified immunity shields an officer from liability if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Benavides v. Nunez, No. 24-20445, 2025 WL 1943949, at *2 (5th Cir. July 16, 2025) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808 (2009) (internal quotation marks omitted)). "To overcome qualified immunity, the plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Id. If an officer defeats either prong, he is entitled to qualified immunity. See id.

## III. Summary of the Arguments.

### (a) Nurse Grimm's Motion (Record Document 33).

In her Motion, Nurse Grimm asserts that all individual capacity claims against her should be dismissed because Plaintiffs' allegations do not show a violation of any constitutional right or clearly established law. See Record Document 33-1 at 12. Nurse Grimm points out that the only allegations specifically directed towards her are found in paragraphs 20, 21, and 27 of the First Amended Complaint. See id. at 13. In addition to these specific allegations, she contends Plaintiffs also make general conclusory allegations against all Defendants. See id. She submits that paragraph 27 of the First

Amended Complaint is nothing more than a formulaic recitation of the elements of a cause of action and should be ignored. See id. at 14.

Additionally, Nurse Grimm avers that Plaintiffs' allegations against her are solely based on her single isolated interaction with McCoy sometime during the morning of March 6, 2024. See id. She advances that there is no allegation explaining how long she interacted with McCoy. See id. Nurse Grimm submits that these allegations against her fail to allege a claim for constitutionally inadequate medical care on the second and third essential elements for a deliberate indifference claim. See id. She maintains there is no allegation that she subjectively drew the inference that a substantial risk of harm to McCoy existed. See id. at 16. Furthermore, she asserts there are insufficient allegations to establish that she disregarded a substantial risk of harm to McCoy. See id.

Nurse Grimm argues all claims against her, in her individual capacity, for punitive damages fail because she did not act with the requisite culpable mental state. See id. at 17. She asserts that there are no factual allegations showing that she was "motivated by evil intent" or acted with "reckless or callous indifference" to McCoy's constitutional rights. Id. at 18. Therefore, Nurse Grimm ultimately asks the Court to grant her Motion and dismiss Plaintiffs' federal Fourteenth Amendment inadequate medical care claims under § 1983. See id. at 19. Alternatively, at a minimum, she requests Plaintiffs' claims for punitive damages be dismissed. See id.

Plaintiffs oppose, asserting that McCoy has a Fourteenth Amendment Due Process right to be free from punishment altogether. See Record Document 44 at 10. Plaintiffs argue their inadequate medical care claim, as alleged, falls within the broad scope of necessary, reasonable medical care and is actionable under § 1983 because

Nurse Grimm was aware of the delirium tremens and failed to provide medical care. <u>See</u> <u>id.</u> at 11. They claim that no medical care was provided to McCoy until CPR was administered as he was dying. <u>See id.</u> Plaintiffs submit that "the right to be free from deliberate indifference to medical care for delirium tremens is clearly established," and the "right was violated by Nurse Grimm when she failed to call for emergency medical transport." <u>Id.</u> at 12.

Plaintiffs contend that information regarding McCoy's serious medical condition "was passed on to the medical staff[,] including [Nurse] Grimm at about 5:30-6am." <u>Id.</u> at 14. They maintain that "[Nurse] Lyles considered the situation so serious that she at that time discussed the situation with [Nurse] Grimm and [Nurse] Johnson and others; a decision was reached with input from nurses Grimm and Johnson to call for emergency transport." <u>Id.</u> However, the Nurse Defendants did not call for emergency transport until 8:30 a.m. <u>See id.</u> Plaintiffs advance that "[Nurse] Grimm permitted precious time to save McCoy's life to slip by in order for Sgt. Carroll on the day shift to make calls to the Bossier City Police Department for the release of a hold." <u>Id.</u> at 14–15. Plaintiffs argue the Nurse Defendants were aware of McCoy's condition by information supplied by the Night Shift Deputies and by their own personal observations. <u>See id.</u> at 15. They maintain Nurse Grimm was subjectively aware of the serious medical condition which carried a substantial risk of death to McCoy and the immediate need for emergency medical transport. <u>See id.</u> at 16.

Plaintiffs submit that "[b]ecause the First Amended Complaint specifically provides the facts of the symptoms and describes the condition of McCoy which was personally observed by defendant nurses and sets forth the training and standards of care of which

the nurses were aware, and the failure to act then no qualified immunity is available." Id. at 16–17. Plaintiffs contend that the conduct of the Nurse Defendants "was objectively unreasonable as alleged because [Nurse Grimm] had the knowledge and the awareness of the substantial risk of serious injury including death due to delirium tremens if McCoy was not transported to a medical facility immediately." Id. at 17–18.

As to their claim for punitive damages, Plaintiffs submit that the standard for punitive damages in the Fifth Circuit is embodied in the pattern jury instructions and accompanying footnotes. See id. at 20–21. Plaintiffs assert they have alleged facts which meet the standard for deliberate indifference, which has the same elements to support an award of punitive damages. See id. at 21. With respect to their state law claims, Plaintiffs state they have brought separate medical malpractice claims against the Nurse Defendants which are pending before the Patient Compensation Fund. See id.

Alternatively, Plaintiffs request the opportunity to amend their First Amended Complaint. See id. at 21. Plaintiffs claim they can allege more details as to Nurse Grimm's knowledge. See id. at 22. Additionally, they assert they can allege, in good faith, that the Nurse Defendants went to McCoy's cell around 6:00 a.m. and observed his symptoms. See id.

In her reply, Nurse Grimm asserts that Plaintiffs' opposition improperly relies on the knowledge and actions of other Defendants and allegations that have not been pled in the First Amended Complaint. See Record Document 51 at 3. She contends that allegations and arguments about what other Defendants knew and did are irrelevant to Plaintiffs' claim against Nurse Grimm. See id. at 4. Furthermore, she reiterates that all individual capacity claims against her should be dismissed because Plaintiffs' allegations

against her do not show a violation of any constitutional right or of clearly established law. See id. at 5. She submits that "[w]hile it is acknowledged that alcohol withdrawals present a risk of serious harm, there are no factual allegations explaining whether, and if so, how Nurse Grimm, interacting with McCoy for the first time sometime between 5:30 a.m. and 8:30 a.m., subjectively drew the inference that a substantial risk of serious harm to McCoy existed." Id. Additionally, Nurse Grimm avers that all claim against her, in her individual capacity, for punitive damages should be dismissed because she did not act with the requisite mental state. See id. at 8.

      (b) Nurse Johnson's Motion (Record Document 34).

In her Motion, Nurse Johnson argues all individual capacity claims against her should be dismissed because Plaintiffs' allegations against her do not show a violation of any constitution right or clearly established law. See Record Document 34-1 at 12. She points out that only paragraphs 20, 21, and 27 of the First Amended Complaint contain specific allegations towards her. See id. Additionally, however, she contends that Plaintiffs make general conclusory allegations against all defendants in paragraph 27, which should be ignored. See id. at 13.

Nurse Johnson avers that Plaintiffs' allegations are solely based on her single isolated interaction with McCoy sometime during the morning of March 6, 2024. See id. at 14. She submits these allegations fail to allege a claim for constitutionally inadequate medical care on either of the second or third essential elements of a claim for deliberate indifference. See id. While it is acknowledged that alcohol withdrawal presents a serious risk of harm, Nurse Johnson asserts there are no factual allegations explaining whether, and if so how, she, interacting with McCoy for the first time between 5:30 a.m. and 8:30

a.m., subjectively drew the inference that a substantial risk of harm to McCoy existed. See id. at 15. She advances that there are no allegations about when this interaction took place, how long it lasted, or any specific factual details about her interaction with McCoy. See id.

Additionally, Nurse Johnson argues Plaintiffs' federal constitutional inadequate medical care claim also fails the second step of the qualified immunity analysis because Plaintiffs cannot meet their burden of showing that Nurse Johnson violated clearly established law. See id. at 17. She also submits that all claims against her, in her individual capacity, for punitive damages fail because she did not act with the requisite culpable mental state. See id. Nurse Johnson contends that there are no factual allegations showing she was "motivated by evil intent" or acted with "reckless callous indifference." Id. at 17–18. Therefore, Nurse Johnson requests that all of Plaintiffs' Fourteenth Amendment inadequate medical care claims under § 1983 against her be dismissed. See id. at 18. Alternatively, at minimum, she asks that Plaintiffs' claims for punitive damages against her be dismissed. See id.

Plaintiffs oppose, presenting similar arguments as in their opposition to Nurse Grimm's Motion. See Record Document 45. With respect to their § 1983 inadequate medical care claim, Plaintiffs assert that Nurse Johnson violated clearly established law when she failed to call for emergency medical transport around 6:00 a.m. on March 6, 2024. See id. at 13. Instead of summoning emergency transport or arranging for transport in-house, Plaintiffs contend that "[Nurse] Johnson permitted precious time to slip by that could have been used to save McCoy's life in order for Sgt. Carroll on the day shift to make calls to the Bossier City Police Department for the release of a hold." Id. at 15.

Plaintiffs maintain that the Nurse Defendants were aware of the need to transport McCoy immediately upon display of the symptoms of alcohol withdrawal and/or delirium tremens. See id. at 16.

Furthermore, Plaintiffs submit that no qualified immunity is available since their First Amended Complaint "specifically provides the facts of the symptoms and describes the condition of McCoy which was personally observed by defendant nurses and sets forth the training and standards of care of which the nurses were aware…." Id. at 17. They contend that the Nurse Defendants' conduct "was objectively unreasonable because the nurses had the knowledge and the awareness of the substantial risk of serious injury including death due to delirium tremens if McCoy was not transported to a medical facility immediately." Id. at 18. Plaintiffs assert "they have put forth facts from which a jury could reasonable determine that McCoy had a serious medical need, his dangerous delirium tremens, [Nurse] Johnson was aware of the significant risk of death without prompt transport and that Nurse Johnson acted with deliberate indifference in not providing any medical treatment for that need and delaying transport for non-medical reasons." Id. at 20.

With respect to their punitive damages claim, Plaintiffs contend that the standard for punitive damages in the Fifth Circuit is embodied in the pattern jury instructions and accompanying footnotes. See id. at 21. As to their state law claims, Plaintiffs provide they have brought separate medical malpractice claims against the Nurse Defendants, which are pending before the Patient Compensation Fund. See id. at 22. Alternatively, Plaintiffs request an opportunity to amend their First Amended Complaint. See id. at 22–23.

14

Nurse Johnson replies, asserting similar arguments as Nurse Grimm. <u>See</u> Record Document 52. She avers that Plaintiffs' opposition improperly relies heavily on the knowledge and actions of other Defendants, and their allegations have not been sufficiently pled. <u>See id.</u> at 3. She contends that allegations and arguments about what other Defendants knew and did are irrelevant to Plaintiffs' claim against her. <u>See id.</u> at 4. Additionally, Nurse Johnson maintains that all individual capacity claims against her should be dismissed because Plaintiffs' allegations do not show a violation of any constitutional right or of clearly established law. <u>See id.</u> at 5. Furthermore, she reiterates that all claims against her, in her individual capacity, for punitive damages fail because she did not act with the requisite culpable mental state. <u>See id.</u> at 8.

<u>(c) Nurse Lyles's Motion (Record Document 35).</u>

In her Motion, Nurse Lyles asserts that all individual capacity claims against her should be dismissed because Plaintiffs' allegations do not show a violation of any constitutional right or of clearly established law. <u>See</u> Record Document 35-1 at 12. Plaintiffs' specific allegations against Nurse Lyles are contained in paragraphs 9, 10, 15, 20, 21, 25, and 27 of the First Amended Complaint. <u>See id.</u> at 13. In addition to these specific allegations, she argues Plaintiffs make general conclusory allegations against all defendants in paragraph 27. <u>See id.</u> at 13–14. She contends that paragraph 27 is nothing more than a formulaic recitation of the elements of a cause of action and should be ignored. <u>See id.</u> at 14.

Nurse Lyles avers that the allegations against her are based on two interactions she had with McCoy on March 4, 2024[2] and sometime during the morning of March 6, 2024. See id. She maintains that the allegations of her March 4 encounter do not satisfy the three elements for deliberate indifference. See id. at 15. As to the March 6 encounter, she advances that the factual allegations fail to allege a claim for constitutionally inadequate medical care with respect to the second and third elements of such a claim. See id. at 16.

Furthermore, Nurse Lyles contends that Plaintiffs' allegations do not satisfy their burden of overcoming her qualified immunity defense. See id. at 17. While the Court may be able to infer from Plaintiffs' allegations that she was aware of facts that a substantial risk of serious harm existed to McCoy, and she subjectively drew the inference that a substantial risk of serious harm existed to McCoy, she called for medical transportation. See id. At most, Nurse Lyles claims Plaintiffs' specific factual allegations suggest she got busy with other medical tasks and simply failed to call for medical transport soon enough. See id. While such actions may constitute negligence, she submits they do not satisfy the extremely high standard of establishing deliberate indifference. See id. at 17–18.

Nurse Lyles also asserts that all claims against her, in her individual capacity, for punitive damages fail because she did not act with the requisite culpable mental state. See id. at 21. She avers there are no factual allegations showing she was "mutative by evil intent" or acted with "reckless or callous indifference" to McCoy's constitutional rights. Id. at 22. Therefore, Nurse Lyles requests that Plaintiffs' federal Fourteenth Amendment

---

[2] In her brief, Nurse Lyes lists the first interaction occurring on March 4, 2025. The Court assumes this is a typographical error, and she meant to state that the first interaction occurred on March 4, 2024.

inadequate medical care claims under § 1983 be dismissed. <u>See id.</u> at 23. Alternatively, at minimum, she asks that Plaintiffs' claims for punitive damages be dismissed. <u>See id.</u>

Plaintiffs oppose, asserting arguments similar to those in their oppositions to Nurse Grimm's Motion and Nurse Johnson's Motion. <u>See</u> Record Document 46. Plaintiffs submit their inadequate medical care claim, as alleged, "falls within the broad scope of necessary, reasonable medical care and is actionable under § 1983, particularly when [Nurse Lyles] [was] aware of the delirium tremens and fail[ed] to provide medical care." <u>Id.</u> at 11. They advance that instead of summoning emergency transport or arranging for transport in-house, "[Nurse] Lyles permitted precious time to save McCoy's life slip by in order for Sgt. Carroll on the day shift to make calls to the Bossier City Police Department for the release of a hold." <u>Id.</u> at 14. Thus, Plaintiffs submit that the Nurse Defendants "violated a clearly established right of [] McCoy by failing to provide medical care with knowledge of his serious medical condition." <u>Id.</u>

Additionally, Plaintiffs aver qualified immunity is not available since their First Amended Complaint "specifically provides the facts of the symptoms and described the condition of McCoy which was personally observed by defendant nurses and sets forth the training and standards of care of which the nurses were aware, and the[n] fail[ed] to act…." <u>Id.</u> at 15. They argue Nurse Lyles "was aware of the potential deadly effect of alcohol withdrawal and that immediate emergency transport to a hospital was required." <u>Id.</u> at 16–17.

With respect to their punitive damages claim, Plaintiffs argue this standard is embodied in the Fifth Circuit's pattern jury instructions. <u>See id.</u> at 19. Plaintiffs contend since they have alleged facts which meet the deliberate indifference standard, they have

also met the punitive damages standard. See id. at 20. As to their state law claims, Plaintiffs claims "against Nurse Lyles arise under medical malpractice and are being pursued under the Louisiana Medical Malpractice Act before the Patient Compensation Fund." Id. Alternatively, as mentioned above, Plaintiffs ask for an opportunity to amend their First Amended Complaint. See id.

In her reply, Nurse Lyles submits arguments similar to those in Nurse Grimm's and Nurse Johnson's replies. See Record Document 53. Nurse Lyles contends that Plaintiffs put forth allegations and arguments about what other Defendants knew and did, which are irrelevant to their claim against Nurse Lyles. See id. at 4. She advances that all individual capacity claims against her should be dismissed because Plaintiffs' allegations do not show a violation of any constitutional right or of clearly established law. See id. at 5. She maintains that there is no specific allegation that she knowingly disregarded a substantial risk of serious harm to McCoy after having subjectively drawn that conclusion. See id. at 6. At most, Nurse Lyes states she may have been negligent. See id. Moreover, she reiterates that all claims against her, in her individual capacity, for punitive damages should be dismissed because she did not act with the requisite culpable mental state. See id.

**IV. Analysis.**

(a) Section 1983 Inadequate Medical Care Claim.

Plaintiffs allege the Nurse Defendants, along with the Deputy Defendants, failed to provide medical assistance to McCoy and violated Plaintiffs' rights under the Fourteenth Amendment. See Record Document 27 at ¶ 27. They claim McCoy had an obvious and

serious medical condition that these Defendants were aware of. See id. Plaintiffs assert that these Defendants "were aware that McCoy required immediate emergency medical attention but none was provided and that failure to provide medical care presented a substantial risk of serious injury and excessive pain up to and including death." Id. They allege these defendants "acted with deliberate [in]difference being aware of the serious medical conditions but failing to take well established actions to avoid serious bodily injury including death." Id.

A § 1983 inadequate medical care claim "occurs only when the conduct amounts to 'deliberate indifference to [the prisoner's] serious medical needs' that 'constitutes the unnecessary and wanton infliction of pain.'" Sencial v. Lopinto, No. 23-3351, 2025 WL 1371822, at *8 (E.D. La. Jan. 23, 2025) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotation omitted)). The Fifth Circuit has held that "'[t]he Fourteenth Amendment requires that state officials not disregard the "basic human needs" of pretrial detainees, including medical care.'" Id. (quoting Reed v. Krajca (Estate of Henson), 440 Fed. Appx. 341, 343 (5th Cir. 2011)). Under the deliberate indifference standard, "a prison official is not liable unless the official knows of and disregards an excessive risk to inmate health or safety." Id. See Farmer v. Brennan, 511 U.S. 825, 847 (1994); Bradley v. Puckett, 157 F. 3d 1022, 1025 (5th Cir. 1998). This standard "is an extremely high standard to meet." Belcher v. Lopinto, No. 18-7368, 2018 WL 5847822, at *2 (E.D. La. Nov. 8, 2018). "'[A] plaintiff must show that public officers were aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn; that they actually drew the inference; and that their response indicates subjective intention that the harm occur [sic].'" Id.

19

A cognizable claim requires a plaintiff to "allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend 'evolving standards of decency.'" Sencial, 2025 WL 1371822, at *8. The "mere disagreement with medical treatment is insufficient to state a claim of deliberate indifference." Id. "In some circumstances, even delay in providing needed medical treatment may amount to a constitutional violation." Cosey v. Gusman, No. 05-3990, 2007 WL 2710804, at *4 (E.D. La. Sept. 12, 2007). "However, the delay must be caused by the defendant's deliberate indifference if it is to rise to the level of a constitutional violation." Id. With respect to alcohol withdrawal, the Fifth Circuit, in dicta, has suggested "that 'ignoring the dangers of alcohol withdrawal and waiting for a "manifest emergency"' could constitute deliberate indifference in certain circumstances." Freeland v. Tarrant Cnty., Tex., 789 Fed. Appx. 406, 409 (5th Cir. 2019) (quoting Thompson v. Upshur Cnty., 245 F. 3d 447, 458 (5th Cir. 2001)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Id. (quoting Banuelos v. McFarland, 41 F. 3d 232, 235 (5th Cir. 1995)).

The Court finds that Plaintiffs have not stated a plausible § 1983 inadequate medical care claim against the Nurse Defendants. Plaintiffs have not pled sufficient facts demonstrating that the Nurse Defendants were personally aware of McCoy's serious medical needs. See Abraugh, 2023 WL 6055491, at *6. Plaintiffs have not sufficiently demonstrated a link connecting the Nurse Defendants "with any wrongdoing based on their 'direct participation.'" Id. (quoting Sanchez v. Young Cnty., 866 F. 3d 274, 281 (5th Cir. 2017)). While Nurse Lyles was supposedly aware of McCoy's potential for alcohol withdrawal and noticed an initial tremor from McCoy, there are no sufficient factual

allegations demonstrating she was aware of his worsening symptoms. In fact, Plaintiffs' assertions specifically provide that the Night Shift Deputies summoned no medical assistance, and the Nurse Defendants did not directly observe McCoy's symptoms worsening throughout the night. <u>See</u> Record Document 27 at ¶ 13.

Plaintiffs' general and speculative allegations that the Nurse Defendants became aware of his serious medical condition the morning of March 6, without more factual support, is insufficient. <u>See id.</u> at ¶ 20. Once Nurse Lyles noticed McCoy was not responding and no longer breathing, she called for emergency medical help around 8:30 a.m., and McCoy was pronounced decease around 9:30 a.m. <u>See id.</u> at ¶¶ 20, 25. Even though there is a period of time between when EMS was called and when McCoy was pronounced deceased, Plaintiffs have not sufficiently alleged that this "delay" was caused by the Nurse Defendants' deliberate indifference towards McCoy.

Plaintiffs' allegations do not demonstrate that the Nurse Defendants knew of McCoy's serious medical condition and acted with deliberate indifference. The Night Shift Deputies never reported his worsening condition to the Nurse Defendants. Besides Plaintiffs' general allegation that the Nurse Defendants became aware of McCoy's serious medical condition the morning of March 6, there are no other sufficient factual assertions demonstrating their awareness. Plaintiffs have failed to meet the deliberate indifference standard and plausibly pled a § 1983 inadequate medical care claim against the Nurse Defendants.

Therefore, the Nurse Defendants' Motions (Record Documents 33, 34, & 35), with respect to the § 1983 inadequate medical care claim, are **GRANTED**. This claim is **DISMISSED WITH PREJUDICE**. Additionally, because the Court has found that the

Nurse Defendants did not show reckless and callous disregard and indifference to McCoy, Plaintiffs are not permitted to recover punitive damages against the Nurse Defendants.

(b) Louisiana Fault and Negligence Claim.

Plaintiffs submit that all Defendants, including the Nurse Defendants, violated Louisiana Civil Code Article 2315. See Record Document 27 at ¶ 32. Plaintiffs attempt to reserve a medical malpractice claims against the Nurse Defendants. See id. Plaintiffs allege that Defendants' "failure to provide adequate medical assistance to [McCoy] under the circumstances was below the standard of care of jailers in a jail setting." Id. at ¶ 33. Rather than transporting McCoy to a "health care provider," he was placed in a WRAP which allegedly aggravated his symptoms. See id.

Addressing Plaintiffs' medical malpractice claims against the Nurse Defendants would be premature, as Plaintiffs have not fully exhausted these claims before the state Medical Review Panel. See Abraugh, 2023 WL 6055491, at *10. "Though the process is underway, it is not yet final." Id. In their oppositions, Plaintiffs confirm their medical malpractice claims against the Nurse Defendants are still pending before the Patient Compensation Fund. See Record Documents 44 at 21, 45 at 22, & 46 at 20.

"Under the Louisiana Medical Malpractice Act, '[n]o action against a health care provider … may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel.'" Id. (quoting LA. REV. STAT. § 40:1231.8). "This process applies to state-law medical malpractice claims filed in federal court." Id. On this basis, Plaintiffs' state negligence claims against the Nurse Defendants cannot

proceed until there has been a resolution of the Medical Review Panel proceeding. See id.

"Federal district courts in Louisiana faced with similar situations have determined that stays are warranted in the interest of judicial economy." Id. See, e.g., Phoenix c. Lafourche Parish Gov't, No. 19-13004, 2021 WL 184909, at *3 (E.D. La. Jan. 19, 2021) (holding that a stay was appropriate pending completion of the medical review panel in a case where the plaintiffs alleged that defendants' deliberate indifference led to a detainee's suicide). In the instant case, Plaintiffs' medical malpractice claims arise from McCoy's death while he was detained at Bossier Max. See id. Therefore, "'[d]iscovery will…apply to all interrelated claims. Additionally, the medical review panel's determination may be admissible (though not conclusive) at any trial of this matter.'" Id. The Court finds a stay is warranted pending resolution of the Medical Review Panel proceeding. See id. Plaintiffs' remaining state-law claims against the Nurse Defendants "largely depend on the alleged medical negligence, so the Court will refrain from addressing those claims at this time." Id. Pending the lifting of the stay, all three of the Nurse Defendants' Motions (Record Documents 33, 34, & 35), with respect to the state-law negligence claim, are **DENIED WITHOUT PREJUDICE**.

As to Plaintiffs' claim for punitive damages, "Louisiana law prohibits 'punitive or other "penalty" damages … unless expressly authorized by statute.'" Mallet v. Geans, No. 19-00427, 2020 WL 548764, at *3 (W.D. La. Feb. 3, 2020). Since Plaintiffs have failed to identify a Louisiana statutory provision that authorizes a punitive damages award for their state law claim, they are not permitted to recover punitive damages against the Nurse Defendants as a matter of law. See id.

(c) Amendment.

Federal Rule 15(a) "provides that 'leave to amend shall be freely given when justice so requires,' but only 'applies where plaintiffs "expressly requested" to amend.'" U.S. ex rel. Jamison v. Del-Jen, Inc., 747 Fed. Appx. 216, 221 (5th Cir. 2018). Moreover, "a district court is justified in denying leave to amend when a plaintiff has 'fail[ed] to cure deficiencies by amendments previously allowed.'" Id. Here, the Court will not give Plaintiffs an opportunity to amend their First Amended Complaint.

On May 8, 2025, Magistrate Judge Hornsby stayed all discovery and allowed Plaintiffs until May 27, 2025 "to file an amended and restated complaint that pleads their best case with respect to the claims against the individual defendants (in anticipation of their qualified immunity defense) and with respect to any other claims, including those challenged by the [old] pending Rule 12 motions." Record Document 22 at 1–2. In May of 2025, all defendants filed motions to dismiss Plaintiffs' claims and asserted similar arguments to the instant Motions. See Record Documents 9, 10, 11, & 14. These previously filed motions to dismiss were handled by a joint order entered by the undersigned; however, Plaintiffs were put on notice and cautioned that they needed to assert more specific allegations and anticipate the qualified immunity defense. See Record Documents 22 & 32.

Plaintiffs seek to amend their complaint once again to cure the same problems previously pointed out by this Court. Even though Plaintiffs have alleged they can provide additional facts to support their arguments, these facts are uncorroborated and should have been included in their First Amended Complaint. The Court finds further amendment

would be futile; therefore, Plaintiffs are not permitted to amend their First Amended Complaint.

**CONCLUSION**

For the reasons listed above,

**IT IS ORDERED** that all three of the Nurse Defendants' Motions (Record Documents 33, 34, & 35) are **GRANTED IN PART AND DENIED IN PART**. All three Motions are **GRANTED** with respect to the § 1983 inadequate medical care claim and punitive damages claim. All three Motions are **DENIED WITHOUT PREJUDICE** as to the state law negligence claim. This claim is **STAYED** pending resolution of the Medical Review Panel proceeding.

An Order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 25th day of August, 2025.

UNITED STATES DISTRICT COURT JUDGE