**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| LATRICE WALKER, ET AL. | CIVIL ACTION NO. 25-0258 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JULIAN WHITTINGTON, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss filed by Defendants Blake Hines ("Officer Hines"), Hunter Jenkins ("Officer Jenkins"), Ryan Kirkhart ("Officer Kirkhart"), Mark Lyons ("Lt. Lyons"), Danny Soliz ("Officer Soliz"), Neysa Washington ("Officer Washington"), Jessie Bearden ("Officer Bearden"), Quinton Black ("Lt. Black"), Buck Boudreaux ("Sgt. Boudreaux"), and John Carroll ("Sgt. Carroll"), (collectively, the "Deputy Defendants"). See Record Document 37. Plaintiffs Latrice Walker and Holly Rouse (collectively, "Plaintiffs") oppose. See Record Document 48. The Deputy Defendants replied. See Record Document 55.

For the purposes of this Ruling, the Deputy Defendants are broken up into two groups: the Day Shift Deputies and the Night Shift Deputies. The Day Shift Deputies include Officer Bearden, Lt. Black, Sgt. Boudreaux, and Sgt. Carroll. The Night Shift Deputies include Officer Hines, Officer Jenkins, Officer Kirkhart, Lt. Lyons, Officer Soliz, and Officer Washington.

For the reasons stated below, the Deputy Defendants' Motion (Record Document 37) is **GRANTED IN PART AND DENIED IN PART**. Their Motion is **GRANTED** with respect to Plaintiffs' § 1983 inadequate medical care claim against the Day Shift Deputies

and their state law fault and negligence claim against all Deputy Defendants. These claims are **DISMISSED WITH PREJUDICE**. Their Motion is **DENIED** as to Plaintiffs' § 1983 inadequate medical care claim against the Night Shift Deputies. This is the only claim that remains.

## BACKGROUND

A full recitation of the facts can be found in the Court's previous Memorandum Ruling. See Record Document 56. The Court will summarize the instant Motion for the purposes of this Ruling. In their Motion, the Deputy Defendants assert that all individual capacity claims against them should be dismissed because Plaintiffs' allegations do not show a violation of any constitutional right or of clearly established law. See Record Document 37-1 at 12.

Plaintiffs allege the Day Shift Deputies arrived at Bossier Parish Maximum Security Facility ("Bossier Max") at 5:30 a.m. on March 6, 2024, the day Jerry D. McCoy ("McCoy") died. See id. The Deputy Defendants submit that the Day Shift Deputies were not at Bossier Max when McCoy started experiencing symptoms. See id. Additionally, they contend that the Day Shift Deputies could not have provided any medical assistance because they were simply not present. See id.

The Deputy Defendants claim the Night Shift Deputies began to notice McCoy's symptoms and placed him in isolation. See id. at 13. The Deputy Defendants assert that by Plaintiffs' own admission, the medical staff had been at sick call on March 4, wherein McCoy reported heavy daily liquor use to Nurse Molli Lyles ("Nurse Lyles") and others on the nursing staff, but not the corrections staff. See id. While Nurse Lyles allegedly

documented a nursing plan to monitor McCoy daily, the Deputy Defendants advance that the correctional staff was not notified of any plan. See id. Thus, they argue it is difficult to see how either the Day Shift Deputies or the Night Shift Deputies acted with deliberate indifference to McCoy's condition if they were never made aware of the medical staff's plan and were not present when the symptoms manifested. See id.

The Deputy Defendants submit that Plaintiffs' allegations fail to state a claim for constitutionally inadequate medical care on either the second or third element of such a claim. See id. at 15. Even if these allegations, taken as true, show that the Deputy Defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, they argue these allegations are insufficient to show they subjectively drew the inference that a substantial risk of serious harm existed. See id. Additionally, they contend that Plaintiffs' §1983 inadequate medical care claim fails at the second step of the qualified immunity analysis. See id. The Deputy Defendants aver there is no precedent clearly establishing that their alleged acts or omissions violated any constitutional right. See id.

The Deputy Defendants also advance that all claims against them, in their individual capacities, for punitive damages fail because they did not act with the requisite culpable mental state. See id. at 16. They assert that there are no factual allegations showing they were "motivated by evil intent" or acted with "reckless or callous indifference" to McCoy's constitutional rights. See id. Furthermore, they submit that the state law claims against them should also be dismissed because they were not informed of the medical plan for withdrawal treatment. See id. at 17. Therefore, the Deputy

Defendants request that all federal constitutional claims against them in their individual capacities and all state law claims against them be dismissed. See id.

Plaintiffs oppose, asserting that their inadequate medical care claim "falls within the broad scope of necessary, reasonable medical care and is actionable under § 1983, particularly when the night shift deputies are aware of the delirium tremens and failed to provide medical care." Record Document 48 at 10. They contend that the Deputy Defendants "were aware of the need to transport McCoy to a medical facility immediately upon display of the symptoms of alcohol withdrawal and/or delirium tremens." Id. at 14. Plaintiffs submit that the Deputy Defendants "violated a clearly establish right of [] McCoy by failing to provide medical care with knowledge of his serious medical condition." Id.

Additionally, Plaintiffs argue qualified immunity does not shield the Deputy Defendants. See id. at 17. They maintain that "[t]he conduct of the individual deputies was objectively unreasonable as alleged because they had the knowledge and the awareness of the substantial risk of serious injury including death due to delirium tremens if McCoy was not transported immediately." Id. They aver the Deputy Defendants were on fair notice that the failure to provide medical care for delirium tremens was a violation of the Fourteenth Amendment. See id. at 18.

With respect to their claim for punitive damages, Plaintiffs assert that the standard for punitive damages is embodied in the Fifth Circuit's pattern jury instructions and accompanying footnotes. See id. Plaintiffs advance they have alleged facts which meet the standard for deliberate indifference, therefore meeting the standard to support an award of punitive damages. See id. at 19.

As to their state law claims, Plaintiffs cite to Louisiana law and the duty it imposes on a police officer. See id. They submit that "[t]he standard of care imposed by Louisiana law upon the confining authority is that medical services be adequate and reasonable." Id. They maintain they have "alleged that the treatment of [] McCoy by the named deputies was not only below the standard of care but was deliberately indifferent and negligent to his serious medical needs." Id. at 20. Therefore, Plaintiffs claim Sheriff Julian Whittington ("Sheriff Whittington") "is liable for fault of his deputies committed during the course and scope of their employment." Id.

Alternatively, Plaintiffs request the opportunity to amend their First Amended Complaint. See id. They claim they can further allege details "as to efforts to release McCoy from jail to avoid the cost." Id. Plaintiffs also provide a list of other detailed factual allegations they may be able to provide in another amendment. See id. at 21–22.

In their reply, the Deputy Defendants assert that Plaintiffs' opposition adds nothing to their argument. See Record Document 55 at 1. The Deputy Defendants contend there was no deliberate indifference to McCoy's condition because he was afforded medical care, and the medical staff did not inform the Deputy Defendants of his condition. See id. at 2. Furthermore, they argue allegations of punitive damages are meritless because there is no evil intent or indifference alleged. See id. at 3. Therefore, the Deputy Defendants request a denial of the instant Motion and reasonable attorney's fees. See id. at 4.

## LAW AND ANALYSIS

**I. Pleading and Dismissal Standards.**

Federal Rule of Civil Procedure 8(a)(2) governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standards to survive such a motion. See id. at 678–79, 1949–50. If the complaint does

not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

## II. Qualified Immunity.

"Qualified immunity shields an officer from liability if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Benavides v. Nunez, No. 24-20445, 2025 WL 1943949, at *2 (5th Cir. July 16, 2025) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808 (2009) (internal quotation marks omitted)). "To overcome qualified immunity, the plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Id. If an officer defeats either prong, he is entitled to qualified immunity. See id.

## III. Analysis.

### (a) Section 1983 Inadequate Medical Care Claim.

Plaintiffs allege the Deputy Defendants and Defendants Nurse Lyles, Jennifer Johnson, and Jennifer Grimm, (collectively, the "Nurse Defendants"), failed to provide medical assistance to McCoy and violated Plaintiffs' rights under the Fourteenth Amendment. See Record Document 27 at ¶ 27. They claim McCoy had an obvious and serious medical condition that these Defendants were aware of. See id. Plaintiffs assert that these Defendants "were aware that McCoy required immediate emergency medical attention but none was provided and that failure to provide medical care presented a substantial risk of serious injury and excessive pain up to and including death." Id. They allege these Defendants "acted with deliberate [in]difference being aware of the serious

7

medical conditions but failing to take well established actions to avoid serious bodily injury including death." Id.

A § 1983 inadequate medical care claim "occurs only when the conduct amounts to 'deliberate indifference to [the prisoner's] serious medical needs' that 'constitutes the "unnecessary and wanton infliction of pain."'" Sencial v. Lopinto, No. 23-3351, 2025 WL 1371822, at *8 (E.D. La. Jan. 23, 2025) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Fifth Circuit has held that "'[t]he Fourteenth Amendment requires that state officials not disregard the "basic human needs" of pretrial detainees, including medical care.'" Id. (quoting Reed v. Krajca (Estate of Henson), 440 F. App'x 341, 343 (5th Cir. 2011)). Under the deliberate indifference standard, "a prison official is not liable unless the official knows of and disregards an excessive risk to inmate health or safety." Id. See Farmer v. Brennan, 511 U.S. 825, 847 (1994); Bradley v. Puckett, 157 F. 3d 1022, 1025 (5th Cir. 1998). This standard "is an extremely high standard to meet." Belcher v. Lopinto, No. 18-7368, 2018 WL 5847822, at *2 (E.D. La. Nov. 8, 2018). "'[A] plaintiff must show that public officers were aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn; that they actually drew the inference; and that their response indicates subjective intention that the harm occur [sic].'" Id.

A cognizable claim requires a plaintiff to "allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend 'evolving standards of decency.'" Sencial, 2025 WL 1371822, at *8. The "mere disagreement with medical treatment is insufficient to state a claim of deliberate indifference." Id. "In some circumstances, even delay in providing needed medical treatment may amount to a constitutional violation." Cosey v. Gusman, No. 05-3990, 2007 WL 2710804, at *4 (E.D.

La. Sept. 12, 2007). "However, the delay must be caused by the defendant's deliberate indifference if it is to rise to the level of a constitutional violation." Id. With respect to alcohol withdrawal, the Fifth Circuit, in dicta, has suggested "that 'ignoring the dangers of alcohol withdrawal and waiting for a "manifest emergency"' could constitute deliberate indifference in certain circumstances." Freeland v. Tarrant Cnty., Tex., 789 Fed. Appx, 406, 409 (5th Cir. 2019) (quoting Thompson v. Upshur Cnty., 245 F. 3d 447, 458 (5th Cir. 2001)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Id. (quoting Banuelos v. McFarland, 41 F. 3d 232, 235 (5th Cir. 1995)).

At the Rule 12(b)(6) stage, the Court finds that Plaintiffs have successfully pled a § 1983 inadequate medical care claim against the Night Shift Deputies; however, they have not pled a plausible claim against the Day Shift Deputies. Plaintiffs' First Amended Complaint alleges sufficient facts showing that the Night Shift Deputies had direct contact with McCoy and "were personally aware of his serious medical needs." Abraugh v. Altimus, No. 20-252, 2023 WL 6055491, at *6 (W.D. La. Sept. 14, 2023). The Night Shift Deputies placed McCoy in isolation after supposedly recognizing something was wrong with him. See Record Document 27 at ¶ 11. The Night Shift Deputies "noted that McCoy could not say where he was and noted he was agitated, profusely sweating, heavily breathing with delusions, hallucinating and had a fever." Id. McCoy "display[ed] the symptoms of alcohol withdrawal and delirium tremens." Id. Even though he started having seizures, and his symptoms increased, Plaintiffs allege the Night Shift Deputies failed to notify any medical personnel or provide medical assistance. See id.

9

While the Night Shift Deputies were on duty, "McCoy began hiding behind furniture for protection against imagined enemies, and began swinging his blanket as though defending himself." Id. at ¶ 13. Plaintiffs claim Lt. Lyons entered his room and applied chemical spray to McCoy; however, no medical assistance was provided. See id. The Night Shift Deputies "summoned no medical assistance nor sought medical consultation contrary to established training and the Sheriff's policy." Id.

From the pleadings, it does not appear that McCoy ever rejected medical care or received a visit from a medical professional before his death. See Smith v. Wellpath Recovery Solutions, LLC, No. 21-00235, 2022 WL 4534997, at *4 (S.D. Tex. Aug. 25, 2022). "The Fifth Circuit has defined a serious medical need as one which is 'so apparent that even laymen would recognize that care is required.'" Id. Here, Plaintiffs have sufficiently alleged the existence of a serious medical need with respect to McCoy's alcohol withdrawal symptoms. Plaintiffs have plausibly pled that the Night Shift Deputies "(1) knew [McCoy] faced a substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to abate it." Id. Over a period of hours, the Night Shift Deputies observed McCoy's condition worsening and failed to seek any medical assistance. Instead, McCoy was in isolation, was placed in a room with a malfunctioning air conditioning unit, was restrained, and was sprayed with a chemical spray. The Night Shift Deputies "failed to act despite knowing that [McCoy] displayed symptoms of serious medical distress." Id.

While Plaintiffs have alleged facts supporting the deliberate indifference standard under § 1983 for an inadequate medical care claim, their allegations must overcome the defense of qualified immunity. The first prong of qualified immunity has been met because

Plaintiffs have plausibly alleged that the Night Shift Deputies violated McCoy's constitutional rights by exhibiting deliberate indifference to his serious medical needs. See id. at *6.

The second prong of the qualified immunity analysis requires the violation of a right that has been clearly established. See id. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Id. (internal quotation marks omitted). "'An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.'" Id. (quoting Estelle, 429 U.S. at 103). Thus, "[t]he Constitution…clearly guarantees persons in custody a right not to have officials disregard excessive risk to their safety, and 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" Id.

In the instant case, Plaintiffs can "demonstrate such a constitutional violation by showing that [the Night Shift Deputies] 'refused to treat [McCoy], ignored his complaints, intentionally treated him incorrectly, [] engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs,' or 'intentionally den[ied] or delay[ed] access to medical care.'" Id. "To define this right at the appropriate level of generality, the Court compares [the Night Shift Deputies'] conduct to facts of similar cases to determine whether, upon observing [McCoy's] situation, 'any reasonable officer would have known that the Constitution required [them] to intervene.'" Id. at *7. For several hours, the Night Shift Deputies observed McCoy in serious medical distress, an altered mental state, and unable to properly interact or communicate. See id. Plaintiffs allege that

11

"McCoy should have been transported to an appropriate facility when [the Night Shift Deputies] first began to observe McCoy's symptoms including agitation, profuse sweating, seizures, heavy breathing with delusions, hallucinating and had a fever." See Record Document 27 at ¶ 13. Plaintiffs assert that they "should have been aware that the failure to provide detoxification protocol would risk serious injury or death." Id. at ¶ 14.

In Thompson v. Upshur Cnty., the Fifth Circuit held that a reasonable jailer "would have recognized the constitutional obligation to summon medical assistance well before [the inmate] died." 245 F. 3d 447, 464 (5th Cir. 2001). In Thompson, "the jailer was aware that the inmate (1) had a high blood alcohol level, (2) was hallucinating and speaking incoherently, (3) was experiencing delirium tremens, and (4) was harming himself" for about eight hours. Smith, 2022 WL 4534997, at *7 (citing Thompson, 245 F. 3d at 463). In Smith, a Texas district court found that the plaintiff's "confusion and erratic behavior on top of his other symptoms should have particularly indicated that he was likely incapable of advocating for his own serious needs." Id. Similar to the instant case, the jailer in Smith sought no medical advice. See id. The district court held that "[i]t is the detainee's obvious medical distress and inability to help himself which in government custody that triggers a constitutional duty to attempt to provide some measure of assistance, rather than intentionally ignoring him." Id.

In the instant case, the Night Shift Deputies were aware of McCoy's dire medical condition but did nothing to secure medical help. See id. at *8. In conjunction with other courts, this Court concludes that once the Night Shift Deputies "observe[d] signs of a dire need for medical assistance, [they] [had] a basic responsibility to take some action regarding medical care, especially [since] [McCoy] show[ed] signs of real helplessness."

12

Id. Plaintiffs have alleged a plausible § 1983 inadequate medical care claim against the Night Shift Deputies because "no reasonable official could have believed this failure to act was lawful, given the alleged facts." Id. Therefore, Plaintiffs' allegations of McCoy's medical condition, along with the Night Shift Deputies' knowledge and observations of McCoy for several hours, could plausibly support a finding that they were deliberately indifferent. See id. at *9. Plaintiffs' allegations, taken as true, overcome the defense of qualified immunity at this stage of the proceeding. See id.

Therefore, the Deputy Defendants' Motion (Record Document 37), with respect to the § 1983 inadequate medical care claim against the Night Shift Deputies, is **DENIED**. Additionally, Plaintiffs' allegations, at this stage, are sufficient to state a claim for punitive damages against the Night Shift Deputies. Therefore, Plaintiffs' § 1983 inadequate medical care claim and punitive damages claim are retained, but only with respect to the Night Shift Deputies.

With respect to the Day Shift Deputies, however, Plaintiffs have failed to plausibly allege a § 1983 inadequate medical care claim. Plaintiffs have not pled sufficient facts demonstrating that the Day Shift Deputies were personally aware of McCoy's serious medical needs. See Abraugh, 2023 WL 6055491, at *6. Plaintiffs have not sufficiently pled a link connecting these Defendants "with any wrongdoing based on their 'direct participation.'" Id. (quoting Sanchez v. Young Cnty., 866 F. 3d 274, 281 (5th Cir. 2017)).

The Day Shift Deputies reported to working around 5:30 a.m. the morning of March 6. See Record Document 27 at ¶ 21. Lt. Lyons, one of the Night Shift Deputies, allegedly informed Lt. Black, the oncoming shift supervisor, of McCoy's serious medical condition around 5:00 a.m. See id. at ¶ 23. Lt. Lyons supposedly recommended medical treatment

13

and examination, but neither Lt. Lyons nor Lt. Black took action to address McCoy's serious medical condition. See id. Plaintiffs allege that Lt. Black failed to inform the medical staff of McCoy's serious medical condition. See id. The other Day Shift Deputies were never made aware by either Lt. Lyons or Lt. Black. Plaintiffs generally claim that the other Day Shift Deputies "became aware of McCoy's alcohol withdrawal and other serious medical symptoms and conditions…," but this conclusory and speculative allegation is insufficient to demonstrate the other Day Shift Deputies knew of McCoy's condition. See id. at ¶ 20. From Plaintiffs' allegations, it is unclear how these other Day Shift Deputies could have known of McCoy's condition if Lt. Black never told them. See id. at ¶ 23. Plaintiffs have provided a "confusing web of alleged liability and scattershot allegations," thereby making it difficult for the Court to understand the extent of the Day Shift Deputies' alleged wrongdoing. See Abraugh, 2023 WL 6055491, at *7.

Furthermore, Plaintiffs' allegations regarding Lt. Black's awareness of McCoy's serious medical condition are insufficient to demonstrate deliberate indifference. While they claim Lt. Lyons informed Lt. Black of McCoy's serious medical condition, there are no allegations demonstrating Lt. Black had personally observed or had direct contact with McCoy. Plaintiffs' general assertions that Lt. Black knew, without more, are insufficient. Plaintiffs do not claim any of the Day Shift Deputies observed McCoy's symptoms or worsening medical condition. In fact, Plaintiffs allege the Day Shift Deputies "attempted to discharge McCoy from their custody…." See Record Document 27 at ¶ 24. While Plaintiffs claim this attempted discharge was for improper reasons, the Day Shift Deputies nonetheless attempted to act. There are not enough factual assertions to meet the high standard of deliberate indifference. The Day Shift Deputies had only been on duty for

14

three to four hours by the time McCoy died. Unlike the Night Shift Deputies who observed McCoy's deterioration throughout the night and failed to contact medical personnel, there are no allegations the Day Shift Deputies ever directly interacted with or observed McCoy.

The Court concludes Plaintiffs have not pled a plausible § 1983 inadequate medical care claim against the Day Shift Deputies. Therefore, the Deputy Defendants' Motion (Record Document 37), with respect to the § 1983 inadequate medical care claim against the Day Shift Deputies, is **GRANTED**. This claim is **DISMISSED WITH PREJUDICE**, but only as to the Day Shift Deputies. Additionally, because the Court has found that the Day Shift Deputies did not show reckless and callous disregard and indifference to McCoy, Plaintiffs are not permitted to recover punitive damages against the Day Shift Deputies.

(b) Louisiana Fault and Negligence Claim.

Plaintiffs submit that all Defendants, including the Deputy Defendants, violated Louisiana Civil Code Article 2315. See Record Document 27 at ¶ 32. Plaintiffs allege that Defendants' "failure to provide adequate medical assistance to [McCoy] under the circumstances was below the standard of care of jailers in a jail setting." Id. at ¶ 33. Rather than transporting McCoy to a "health care provider," he was placed in a WRAP which allegedly aggravated his symptoms. See id.

Plaintiffs assert Defendants "had a duty to provide medical care, access to services, adequate housing, and accommodations." Id. at ¶ 32. Additionally, they submit that "[j]ailers as custodians have a duty to protect and care for their charges." Id. They allege that "[t]he failure to cause the prison doctor or send him to a hospital or other health

15

care provider when [McCoy] was suffering from alcohol withdrawal delayed needed medical treatment which in turn caused [McCoy] to suffer from a coronary infraction leading to his death; and also caused other symptoms leading to death including but not limited to pain, discomfort, distress, anxiety, and mental health issues." Id. Plaintiffs maintain that Defendants' "failure to provide adequate medical assistance to [McCoy] under the circumstances was below the standard of care of jailers in a jail setting." Id. at ¶ 33.

The Court finds that Plaintiffs' allegations against the Deputy Defendants, with respect to their Louisiana fault and negligence claims, are insufficient legal conclusions. While Plaintiffs generally reference Louisiana Civil Code Article 2315, their allegations are a mere recitation of the elements for a state law negligence claim. Article 2315 is a generic code article dealing with liability for acts causing damages; it does not set forth a certain duty or standard of care. Plaintiffs' assertions that the Deputy Defendants acted below the standard of care and violated a duty are insufficient legal conclusions that do not survive dismissal.

Additionally, Plaintiffs group together "the Defendant Bossier Parish Sheriff's employees, and jailers, including but not limited to named individual defendants herein…." Id. at ¶ 32. They impose a general duty on a group of defendants, some not even specifically identified, which is insufficient at the pleading stage. Plaintiffs' attempt to assert state law fault and negligence claims against unnamed defendants is improper, and the Court will not address such claims against unknown defendants. Moreover, the Court does not find Plaintiffs' allegations state plausible claims for relief; rather, their allegations are general, speculative legal conclusions that cannot overcome dismissal.

16

Therefore, with respect to Plaintiffs' state law fault and negligence claim against the Deputy Defendants, the Deputy Defendants' Motion (Record Document 37) is **GRANTED**, and this claim is **DISMISSED WITH PREJUDICE**. As to Plaintiffs' claim for punitive damages, "Louisiana law prohibits 'punitive or other "penalty" damages … unless expressly authorized by statute.'" Mallet v. Geans, No. 19-00427, 2020 WL 548764, at *3 (W.D. La. Feb. 3, 2020). Since Plaintiffs have failed to identify a Louisiana statutory provision that authorizes a punitive damages award for their state law claims, they are not permitted to recover punitive damages against any of the Deputy Defendants for this state law claim as a matter of law. See id.

(c) Amendment.

Federal Rule 15(a) "provides that 'leave to amend shall be freely given when justice so requires,' but only 'applies where plaintiffs "expressly requested" to amend.'" U.S. ex rel. Jamison v. Del-Jen, Inc., 747 Fed. Appx. 216, 221 (5th Cir. 2018). Moreover, "a district court is justified in denying leave to amend when a plaintiff has 'fail[ed] to cure deficiencies by amendments previously allowed.'" Id. Here, the Court will not give Plaintiffs an opportunity to amend their First Amended Complaint.

On May 8, 2025, Magistrate Judge Hornsby stayed all discovery and allowed Plaintiffs until May 27, 2025 "to file an amended and restated complaint that pleads their best case with respect to the claims against the individual defendants (in anticipation of their qualified immunity defense) and with respect to any other claims, including those challenged by the [old] pending Rule 12 motions." Record Document 22 at 1–2. In May of 2025, Defendants had all filed Rule 12 motions to dismiss Plaintiffs' claims, which asserted similar arguments to the currently pending motions to dismiss. See Record

17

Documents 9, 10, 11, & 14. These previously filed motions to dismiss were handled by a joint order entered by the undersigned; however, Plaintiffs were put on notice and cautioned that they needed to assert more specific allegations and anticipate the qualified immunity defense. See Record Documents 22 & 32.

Plaintiffs seek to amend their complaint once again to cure the same problems previously mentioned by this Court. Even though they have alleged they can provide additional facts to support their arguments, these facts are uncorroborated should have been included in their First Amended Complaint. The Court find further amendment would be futile; therefore, Plaintiffs are not permitted to amend their First Amended Complaint.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Deputy Defendants' Motion (Record Document 37) is **GRANTED IN PART AND DENIED IN PART**. Their Motion is **GRANTED** with respect to their § 1983 inadequate medical care claim against the Day Shift Deputies and state law fault and negligence claim against all of the Deputy Defendants. These claims are **DISMISSED WITH PREJUDICE**. Their Motion is **DENIED** as to Plaintiffs' § 1983 inadequate medical care claim against the Night Shift Deputies. This claim remains.

**IT IS FURTHER ORDERED** that Plaintiffs are not permitted to receive punitive damages relating to their § 1983 claim against the Day Shift Deputies or their state law claim against all of the Deputy Defendants. However, Plaintiffs may be able to receive an award of punitive damages relating to their § 1983 claim against the Night Shift Deputies.

An Order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 25th day of August, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE