UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LATRICE WALKER, ET AL.                    CIVIL ACTION NO. 25-0258

VERSUS                                    JUDGE S. MAURICE HICKS, JR.

JULIAN WHITTINGTON, ET AL.                MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court are two Motions to Dismiss filed by Defendant Bossier Parish Policy Jury ("BBPJ") (Record Document 36) and Defendant Sheriff Julian Whittington ("Sheriff Whittington") (Record Document 38). Plaintiffs Latrice Walker and Holly Rouse (collectively, "Plaintiffs") opposed both Motions. See Record Documents 47 & 48. The BBPJ and Sheriff Whittington replied. See Record Documents 50 & 54. For the reasons set forth below, both Motions are **GRANTED**. All claims asserted by Plaintiffs against the BBPJ and Sheriff Whittington are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

A full recitation of the facts can be found in the Court's previous Memorandum Ruling. See Record Document 56. The Court will summarize the instant Motions for the purposes of this Ruling.

(a) The BPPJ's Motion (Record Document 36).

In the BPPJ's Motion, it asserts that Plaintiffs' Monell claim should be dismissed. See Record Document 36-1 at 9. The BPPJ contends that Plaintiffs' allegations are conclusory rather than factual. See id. at 12. It argues many of Plaintiffs' allegations

strongly undermine any <u>Monell</u> claim because they illustrate how the BPPJ took numerous actions to ensure adequate health care for inmates. <u>See id.</u>

The BPPJ points out that pursuant to Plaintiffs' own allegations, it employed at least three educated, trained, and licensed nurses to provide medical care to inmates, which strongly undermines an assertion that the BPPJ was deliberately indifferent to inmates' medical needs. <u>See id.</u> at 12–13. The BPPJ contends it had a procedure for deputies to request EMS to come to the facility and transport a prisoner to a medical facility. <u>See id.</u> at 13. Under Plaintiffs' own allegation, the BPPJ had an alcohol withdrawal protocol, but the correctional officers were never placed on notice. <u>See id.</u>

The BPPJ avers that all of Plaintiffs' allegations regarding unconstitutional customs, policies, and practices are conclusory and fail to adequately allege an unconstitutional custom, policy, or practice. <u>See id.</u> The BPPJ goes through each specific allegation. With respect to paragraph 29, it maintains that Plaintiffs have pled no facts in support of this allegation despite the chance to amend their Original Complaint. <u>See id.</u> The BPPJ argues Plaintiffs have failed to allege any prior similar incidents at Bossier Max involving nurses employed by the BPPJ who demonstrated a deliberate refusal to provide transportation for an inmate to a hospital. <u>See id.</u> As to paragraph 30, the BPPJ asserts that this allegation is also conclusory and provides no factual support this alleged policy exists. <u>See id.</u> at 14.

Additionally, the BPPJ submits that Plaintiffs' state law claims, if any, should be dismissed. <u>See id.</u> The BPPJ argues it is unclear whether Plaintiffs seek to hold it vicariously liable for these claims under the theory of respondeat superior based upon their reservation with respect to Defendants Molli Lyles, Jennifer Johnson, and Jennifer

Grimm (collectively, the "Nurse Defendants"). See id. However, it points out that this Court has previously dismissed the state law claims against the Nurse Defendants. See id. As such, the BPPJ advances that any state law claim seeking to hold it vicariously liable for the alleged medical malpractice of the Nurse Defendants must also be dismissed. See id. at 14–15.

The BPPJ also asserts that Plaintiffs' claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA") should be dismissed. See id. at 15. It contends that Plaintiffs' claims arising out of the ADA and RA are merely the same medical negligence claims as alleged in the Original Complaint and have been repackaged and rebranded. See id. at 16. The BPPJ maintains that these new claims contain legal conclusions and do not establish intentional disability discrimination. See id. at 16, 17.

Plaintiffs oppose the BPPJ's Motion, arguing that their Monell claim is sufficiently pled because all Defendants "could have obtained emergency transport." Record Document 47 at 18. Plaintiffs assert that "[t]he policy-making official deliberately intended to make all efforts to avoid the medical care cost and thus not provide emergency transport to a medical facility[], and that custom policy caused [McCoy's] injury." Id. Plaintiffs claim this custom of reducing expenses has been in effect since 2018, and they cite to Fletcher v. Whittington. See id. at 19. Plaintiffs contend that "[a]lthough [they] need not show specific examples, they show a de facto policy of no emergency care for a detoxifying detainee exists." Id.

Furthermore, Plaintiffs advance they "can allege in good faith that none of the nurses were disciplined by their supervisors with the [BPPJ] in any fashion although they

violated the constitutional rights of McCoy in the most ultimate way by their deliberate indifferent to his serious medical needs." Id. at 20. Plaintiffs maintain they can also "allege in good faith that there were no changes in custom or practice after [] McCoy's death;" therefore, they argue "there is constructive notice to the policymakers." Id. at 20–21. Moreover, they submit all Defendants "in following this custom or policy, delayed calling for emergency care for [] Plaintiff[s] to determine if medical care could be denied all together without a charge to either entity." Id. at 21.

Plaintiffs assert that at the time of McCoy's death, Molli Lyles ("Nurse Lyles") was the Medical Administrator at Bossier Max. See id. at 22. As the Medical Administrator, Plaintiffs advance that she is the authorized, final decisionmaker regarding the provision of medical care by BPPJ. See id. They maintain Nurse Lyles adopted and approved the course of inaction and deliberate indifference towards McCoy, which lead to his death. See id. at 22–23. Plaintiffs aver that Nurse Lyles, as the chief medical officer for the BPPJ, binds the BPPJ for her deliberate indifference and failure to provide medical care. See id. at 23.

With respect to their ADA claim against the BPPJ, Plaintiffs argue McCoy's alcohol withdrawal and delirium tremens qualify as a disability under the ADA. See id. at 26. As a result of delirium tremens, McCoy experienced auditory and visual hallucinations, delusions, shaking, seizures, high temperature, and profuse sweating. See id. Plaintiffs contend that "these conditions create a substantial impairment of the major life activities of consciousness and the ability to perceive reality." Id. Plaintiffs cite to certain June 2023 "Guidelines for Managing Substance Withdrawal in Jails," which the Court notes is not included in their First Amended Complaint. Id.

4

Plaintiffs assert that Sheriff Whittington, acting through his deputies and nurses, prevented "jailers" from providing emergency transport for alcohol withdrawal due to cost. See id. at 28. Thus, Plaintiffs claim there is a failure to accommodate McCoy and also intentional discrimination due to his disability. See id. They contend that "[i]t was obvious to any jailer that [] McCoy was unable to manage his own affairs, had lost his ability to perceive reality and care for himself." Id. at 30. They submit that "there is an outright denial of any medical services until [] McCoy stopped breathing." Id. To support their arguments, Plaintiffs reference specific Department of Justice documents and ADA regulations, which are not specifically alleged in their First Amended Complaint. See id. at 31. Alternatively, Plaintiffs ask for an opportunity to amend their First Amended Complaint. See id. Plaintiffs claim they can make more detailed allegations supporting their arguments against the BPPJ. See id. at 32.

In its reply, the BBPJ contends Plaintiffs argue for the application of an outdated 12(b)(6) standard because their opposition quotes and cities multiple cases that pre-date Twombly and Iqbal. See Record Document 50 at 1. Additionally, the BBPJ argues Plaintiffs' reference to allegations that have not actually been made in their First Amended Complaint should be disregarded. See id. The BBPJ submits that Plaintiffs have failed to plead any facts showing that it had a custom, policy, or practice of attempting to avoid the cost of medical care or undercutting medical care to inmates to reduce expenses. See id. at 3.

Additionally, the BBPJ points out that at the time of the 2017 death, which resulted in Fletcher, it did not directly provide medical care to inmates at Bossier Max. See id. at 4. Thus, the BBPJ avers that events at Bossier Max which occurred before it took over

5

direct provision of medical care could not have put the BBPJ on notice of any problems with its customs, policies, or practices with respect to the direct provision of medical care at Bossier Max. See id. at 5. Moreover, summary judgment was granted in favor of BBPJ in the case of Fletcher; therefore, the BBPJ advances that this case supports dismissal. See id. Furthermore, the BBPJ maintains that the previous 2019 death mentioned by Plaintiffs in their First Amended Complaint should be disregarded for similar reasons. See id.

The BBPJ also argues that Plaintiffs' Monell claim based on its failure to discipline its employees and failure to change it medical care customs, policies, or practices after McCoy's death is not pled in the First Amended Complaint. See id. at 7. Rather, the BBPJ emphasizes that the First Amended Complaint asserts these allegations against only Sheriff Whittington. See id. However, even if these allegations were asserted against the BBPJ, it submits they would fail on the merits. See id.

Additionally, the BBPJ submits that Plaintiffs' ADA and RA claims should be dismissed. See id. at 9. The BBPJ avers that Plaintiffs' opposition largely addresses their ADA and RA claims against Sheriff Whittington rather than the BBPJ. See id. However, to the extent that Plaintiffs' arguments address their claims against the BBPJ, it contends that these arguments confirm their claims against the BBPJ are for inadequate medical care rather than discrimination. See id. at 10.

(b) Sheriff Whittington's Motion (Record Document 38).

Sheriff Whittington submits that the Monell claim against him should be dismissed because Plaintiffs' allegations are conclusory rather than factual. See Record Document

38-1 at 8, 10. Sheriff Whittington points out that Plaintiffs' own allegations state that corrections officers were not placed on notice of the medical staff's plans. See id. at 10. He asserts that all of Plaintiffs' reiterated allegations regarding unconstitutional purported customs, policies, and practices are conclusory and still fail to adequately allege an unconstitutional custom, policy, or practice. See id.

Sheriff Whittington analyzes and dismantles certain allegations against him. He argues the allegation contained in paragraph 29 is conclusory, and Plaintiffs have not pled any facts to support this allegation despite their chance to amend. See id. Additionally, he advances that Plaintiffs have failed to allege any prior similar incidents at Bossier Max wherein there was a deliberate refusal to provide transportation for an inmate to a hospital. See id. at 11. Furthermore, Sheriff Whittington avers that the bare, conclusory allegations in paragraph 30 relative to a settlement entered into in another case is irrelevant. See id. He contends there are no allegations pled which would relate that matter to this one, nor are any of the similarities pled so as to establish this link. See id.

Additionally, Sheriff Whittington asserts that all ADA and RA claims should be dismissed. See id. He maintains that these claims are merely the same medical negligence claims as alleged in Plaintiffs' Original Complaint and have just been repackaged and rebranded. See id. at 13. He argues these allegations are insufficient to establish intentional disability discrimination by Sheriff Whittington. See id.

Plaintiffs oppose Sheriff Whittington's Motion, asserting that their Monell claim plausibly alleges facts that "support an inference that customs and policies were the 'moving force' behind the deliberate indifference that led to [] McCoy's death." Record Document 49 at 10. They submit that "[a]llowing arbitrary delays in emergency treatment

7

or transport to determine if the prisoner can be released from [Sheriff Whittington's] custody first constitutes such a custom where it is obvious that a constitutional violation will occur." Id. at 12. Plaintiffs maintain that "[d]elay for any reason unrelated to the need for medical care implicates deliberate indifference to the serious, known medical needs of the prisoner." Id. at 13. They compare Sheriff Whittington's policy or custom to an "under staffing policy or practice." Id. Plaintiffs submits that had Sheriff Whittington and the BPPJ "not arbitrarily understaffed nurses and eliminated the nursing staff from the night shift, then [] McCoy's server alcohol withdrawal that began at 1900 hours could have been averted." Id. Plaintiffs cite to courts outside of the Fifth Circuit to support their arguments. See id. at 14–15.

Additionally, Plaintiffs aver that this custom of reducing expenses has been ongoing since 2018. See id. at 15. They claim they can allege in good faith that Sheriff Whittington "agreed to a reduction in nurse staffing" and cite to Fletcher. Id. Plaintiffs assert that none of the deputies involved were disciplined or counseled by Sheriff Whittington although they allegedly acted with deliberate indifference towards McCoy's serious medical needs. See id. at 17. Furthermore, they argue there were no changes in custom or practice. See id.

With respect to their ADA claim against Sheriff Whittington, Plaintiffs provide similar arguments to their opposition to the BBPJ's Motion. They submit McCoy's alcohol withdrawal and delirium tremens qualify him as disabled under the ADA. See id. at 21. Again, Plaintiffs cite to specific Department of Justice guidelines and case law that were not provided in their First Amended Complaint. See id. at 21–22.

8

Alternatively, Plaintiffs ask for the opportunity to amend their First Amended Complaint. See id. at 24. They claim they can allege more details regarding the "efforts to release McCoy from jail to avoid the cost." Id. Plaintiffs argue Sheriff Whittington "had a policy of avoiding medical expenses for 'short timer' offenders: that is, for prisoners who were scheduled to be released in the near future. This effort was done in compliance with an effort to reduce costs." Id. Furthermore, Plaintiffs advance than can make additional allegations if given the opportunity to amend. See id. at 24–25.

Sheriff Whittington replies, asserting that Plaintiffs rehash their conclusory allegations rather than raising new issues. See Record Document 54 at 1. Sheriff Whittington points out that Plaintiffs suggest Nurse Lyles did not call for immediate transportation to a health care facility, not the corrections officers. See id. at 2. He submits there are no new claims, arguments, or facts to overcome Plaintiffs' failure to plead an adequate claim against him. See id.

With respect to the ADA claim asserted against Sheriff Whittington, he contends that inadequate medical treatment for a disability should not be confused with intentional discrimination because of a disability. See id. He maintains there is no proof of intentional discrimination against Plaintiffs or McCoy. See id. at 2–3.

## LAW AND ANALYSIS

### I. Pleading and Dismissal Standards.

Federal Rule of Civil Procedure 8(a)(2) governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 555, 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." <u>Colle v. Brazos Cnty., Tex.</u>, 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. <u>See Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. <u>See id.</u> Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the <u>Iqbal</u> and <u>Twombly</u> standards to survive such a motion. <u>See id.</u> at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. <u>See id.</u>

## II. Analysis.

### (a) Monell Claim.

Plaintiffs allege that "[a] delay in providing transport to a hospital was caused by deliberate indifference to McCoy's serious medical condition created by [Sheriff Whittington's] and [the BPPJ's] policy and practice of attempting to avoid the cost of medical care even when it is obvious medical care is required." Record Document 27 at ¶ 29. Plaintiffs aver that the actions of Sheriff Whittington and the BPPJ "caused [McCoy] to suffer more pain and punishment, and extreme stress to his cardiac system leading to this death." Id. at ¶ 30.

Plaintiffs assert that Sheriff Whittington and the BPPJ "have a practice or policy of saving the expense of providing medical services to inmates by undercutting and withholding medical care to save expenses." Id. Beginning in 2018, they claim that Sheriff Whittington, "wanting to avoid the cost of medical care[,] contracted with the [BPPJ] to supply nurses." Id. However, Plaintiffs claim this program was terminated in an effort to save medical expenses. See id. As a result, they allege "there was a reduced nursing staff which was only on duty during the week from around 6am until around 6-7pm each day." Id. After 7:00 p.m. on weekdays and all-day during weekends, Plaintiffs claim the "deputies began requesting increased emergency medical assistance in the form of EMS more frequently, increasing costs." Id. Thereafter, Sheriff Whittington allegedly "instituted practices to reduce emergency services including delaying requests for emergency transport to unnecessarily verify the need." Id.

Plaintiffs point to a settlement in 2022 involving the death of Collin James Fletcher ("Fletcher") in 2017 and the death of Randall Layne Abraugh ("Abraugh") in 2019 to support their arguments. See id. at ¶¶ 30A, 30C. They argue Sheriff Whittington and the BPPJ "have consistently failed to attend to the serious medical needs of inmates, including alcohol withdrawal." Id. at ¶ 30D. They allege that the Bossier Parish Sheriff's Office knew "its employees were not providing adequate medical care, but they continued to employ them nonetheless." Id.

"A suit against a government officer 'in his official capacity' is the same as a suit against the government entity of which he is an agent." Holmes, 718 F. Supp. 3d at 604 (internal quotation marks omitted). There is no respondeat superior liability under § 1983; rather, municipalities are liable under § 1983 "'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may facilely be said to represent official policy, inflicts the injury….'" Id. (internal quotation marks omitted). Municipal liability under § 1983 requires three elements: "'(1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose "moving force" is that policy or custom.'" Id. A plaintiff seeking Monell liability "must 'identify a municipal policy or custom that caused [his] injury.'" Id. (internal quotation marks omitted). "'The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority.'" Id. (quoting Valle v. City of Hous., 613 F. 3d 536, 542 (5th Cir. 2010), citing Burge v. St. Tammany Parish, 336 F. 3d 363, 369 (5th Cir. 2003)).

With respect to the second prong, "'A pattern is tantamount to official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal

policy.'" <u>Jordan v. Gautreaux</u>, 593 F. Supp. 3d 330, 353–54 (M.D. La. 2022) (internal quotation omitted). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" <u>Id.</u> at 354 (internal quotation omitted). Therefore, a plaintiff "must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" <u>Id.</u> (internal quotation omitted). "'A pattern required similarity and specificity…[and] must point to the specific violation in question.'" <u>Id.</u> (internal quotation omitted). Additionally, a pattern requires "'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" <u>Id.</u> The Fifth Circuit has previously held that 27 complaints between 2002 and 2005 did not constitute a pattern since the majority of the incidents involved "'small crimes,' and the police force was large." <u>Id.</u> See <u>Peterson v. City of Fort Worth, Tex.</u>, 588 F. 3d 838, 851 (5th Cir. 2009).

As to the third prong, "'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" <u>Id.</u> (internal quotation omitted). This standard of deliberate indifference is a high standard and showing simple or heightened negligence is insufficient. <u>See id.</u> Furthermore, a plaintiff must also "'meet the heightened standard of causation in order to hold a municipality liable under § 1983.'" <u>Id.</u> A plaintiff is required to demonstrate "that the municipal policy was the 'moving force' that caused the specific constitutional violation.'" <u>Id.</u> (internal quotation omitted). "To establish deliberate indifference, a plaintiff must show that officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that

13

would clearly evince a wanton disregard for any serious medical needs.'" Goldstein v. Wood, No. 23-00899, 2024 WL 1270434, at *7 (W.D. La. Mar. 8, 2024) (quoting Domino v. Tex. Dep't of Criminal Justice, 239 F. 3d 752, 756 (5th Cir. 2001)).

Here, Plaintiffs' First Amended Complaint fails to meet these heightened standards to satisfy a Monell claim against the BBPJ and Sheriff Whittington. The only specific allegations asserted against the BBPJ within their First Amended Complaint are contained within paragraphs 29, 30, and 30A. Plaintiffs mainly "point the finger" at Sheriff Whittington. Plaintiffs claim the BBPJ, in conjunction with Sheriff Whittington, have a "policy and practice of attempting to avoid the cost of medical care even when it is obvious medical care is required." Record Document 27 at ¶ 29. They maintain that Sheriff Whittington's and the BBPJ's "acts or omissions…caused [McCoy] to suffer more pain and punishment, and extreme stress to his cardiac system leading to his death." Id. at ¶ 30. They allege that Sheriff Whittington and the BBPJ "have a practice or policy of saving the expense of providing medical services to inmates by undercutting and withholding medical care to save expenses." Id.

Plaintiffs fail to identify a policymaking official who acted with deliberate indifference towards McCoy in an effort to avoid the cost of EMS transportation in accordance with a specific practice, policy, or custom. In their opposition, Plaintiffs state that Nurse Lyles was the final decision-maker; however, this allegation was never asserted in their First Amended Complaint; thus, the Court will not accept this allegation as true. Plaintiffs also cite to several cases in which a court "found a Monell claim was established and pled where there was a denial of medical care due to attempts to save

costs." Record Document 47 at 18–19. However, none of these cases are controlling or binding on this Court because they fall outside of the Fifth Circuit.

Furthermore, <u>Fletcher</u> and <u>Abraugh</u> do not support Plaintiffs' arguments. In <u>Fletcher</u>, this Court granted summary judgment in favor of the Bossier Parish Sheriff's Office and Sheriff Whittington. This Court concluded that defendants "maintained policies and procedures to ensure that inmates were provided with appropriate medical care." <u>Fletcher</u>, No. 18-1153, 2022 WL 3643513, at *9 (W.D. La. Aug. 23, 2022). Moreover, in the instant case, Plaintiffs assert that Sheriff Whittington agreed to provide policies and training for alcohol withdrawal in 2022. <u>See</u> Record Document 27 at ¶ 30C. McCoy's death occurred in 2024; therefore, the policies, or lack thereof, in place during Fletcher's death and Abraugh's death are not the same as those in place at the time of McCoy's death. Thus, <u>Fletcher</u> and <u>Abraugh</u> do not demonstrate that Sheriff Whittington and the BBPJ "had actual or constructive notice of a pattern of similar constitutional violations caused by the policy." <u>Blanchard-Daigle v. Geers</u>, 802 Fed. Appx. 113, 117 (5th Cir. 2020).

Additionally, while Plaintiffs claim that these unconstitutional practices or polices have been implemented, they have failed to plausibly allege culpability and causation. At 8:30 a.m. on March 6, 2024, Nurse Lyles noticed McCoy was not breathing and called for emergency help. <u>See</u> Record Document 27 at ¶ 20. CPR was attempted, but McCoy ultimately died around 9:30 a.m. <u>See id.</u> at ¶ 25. This chain of events all occurred within a one-hour time frame, which in the Court's eyes, is short. While Plaintiffs allege there was significant delay, emergency transportation was called once McCoy stopped breathing. Plaintiffs do not point to an official policy stating how long it should take EMS transportation to arrive. From their perspective, the delay was too long because of the

15

ultimate result; however, their opinion on how the situation should have been handled is irrelevant for <u>Monell</u> liability purposes.

As the Court has previously explained, Plaintiffs' allegations of deliberate indifference are only sufficient with respect to the night shift deputies. <u>See</u> Record Document 56. Plaintiffs have failed to causally connect the BBPJ and Sheriff Whittington's implemented policies to the conduct of the night shift deputies. The Nurse Defendants and the day shift deputies did not act improperly in accordance with a specific policy implemented by the BBPJ or Sheriff Whittington. Plaintiffs' allegations do not sufficiently address these elements of culpability and causation. The Court fails to see how this alleged delay connects to a specific practice, policy, or custom of the BBPJ or Sheriff Whittington. Their allegations are uncorroborated and speculative. Both the BBPJ's Motion (Record Document 34) and Sheriff Whittington's Motion (Record Document 38) are **GRANTED**. Plaintiffs' <u>Monell</u> claim is **DISMISSED WITH PREJUDICE**.

### (b) Louisiana Fault and Negligence Claim.

Plaintiffs submit that all Defendants, including the BBPJ and Sheriff Whittington, violated Louisiana Civil Code Article 2315. <u>See</u> Record Document 27 at ¶ 32. Plaintiffs attempt to reserve their medical malpractice claims against the Nurse Defendants. <u>See</u> <u>id.</u> Plaintiffs allege that Defendants' "failure to provide adequate medical assistance to [McCoy] under the circumstances was below the standard of care of jailers in a jail setting." <u>Id.</u> at ¶ 33. Rather than transporting McCoy to a "health care provider," he was placed in a WRAP which allegedly aggravated his symptoms. <u>See id.</u>

The Court finds that Plaintiffs' allegations against the BBPJ and Sheriff Whittington contain improper legal conclusions that provide a mere recitation of the elements for a negligence claim. Article 2315 is a generic code article dealing with liability for acts causing damages; it does not set forth a certain duty or standard of care. See LA. CIV. CODE art. 2315. Additionally, their First Amended Complaint does not assert specific allegations against certain Defendants; rather, Plaintiffs group all Defendants together under this claim. The Court is unable to ascertain and decipher which specific allegations relate to which Defendant, which is problematic at the pleading stage.

To the extent that Plaintiffs are attempting to assert a claim against the BBPJ and Sheriff Whittington for the alleged acts and omissions of the Nurse Defendants, the Court will not address such arguments. As stated in a previous Memorandum Ruling, the state law negligence claims against the Nurse Defendants have been stayed pending a resolution of the Medical Review Panel proceeding. See Record Document 56. Therefore, the BBPJ's Motion (Record Document 36) and Sheriff Whittington's Motion (Record Document 38), with respect to the Louisiana state law fault and negligence claim, are **GRANTED**. This claim is **DISMISSED WITH PREJUDICE**.

<u>(c) ADA and RA Claims.</u>

With respect to their ADA claim, Plaintiffs allege Sheriff Whittington and the BPPJ failed "to provide inmates with disabilities with basic reasonable accommodations to ensure equivalent access to all of the programs, activities, and services offered at the jail." Record Document 27 at ¶ 36. Plaintiffs claim this failure "not only denies [prisoners] access to prison programs and services, but also substantially increases the risk that they

17

are injured in an emergency or are the victim of violence or abuse from other prisoners." Id. Moreover, they submit this failure "results in the provision of inadequate mental health care." Id.

Plaintiffs allege that Sheriff Whittington and the BPPJ "have executed systemic and willful discrimination against and failure to provide reasonable accommodations in programs, services, and activities to, inmates in the Jail who have, or are perceived to have, disabilities" for years. Id. at ¶ 37. They claim McCoy "either had or was perceived by Jail, deputy and nursing staff to have, present physical impairments that qualified as disability" because "he had a long-standing history of substance use disorder, the disorder substantially limited his major life activities, such as consciousness, walking, communicating and awareness and he exhibited behaviors consistent with such a diagnosis." Id. at ¶ 38. Plaintiffs assert "McCoy was denied access to services, including but not limited to, appropriate health care services; and he was denied reasonable accommodations for his disabilities, including but not limited to, additional safety checks, medical monitoring, or other security, medication-assisted withdrawal treatment, emergency transport to a medical facility, and regular medical assessments, because of his actual or perceived substance use disorder." Id. at ¶ 39.

Furthermore, Plaintiffs advance that this "lack of adequate policies and procedures makes inmates with disabilities vulnerable to exploitation by other inmates and increases their risk of serious injury or death." Id. at 42. Plaintiffs allege Sheriff Whittington and the BPPJ have "an affirmative obligation to create and maintain a system to identify and track individuals with disabilities and the accommodations they require, particularly those with serious alcohol or drug withdrawal symptoms." Id. at ¶ 43. They maintain that Sheriff

Whittington's and the BPPJ's failures to fulfill this obligation results "in the denial of accommodations mandated by federal law, placing inmates at risk of discrimination, injury, and/or exploitation." Id. at ¶ 46.

With respect to their RA claim, Plaintiffs incorporate paragraphs one through 48 of their First Amended Complaint. See Record Document 27 at ¶ 49. Additionally, they point out that like the ADA, the RA requires the recipients of federal funds to reasonably accommodate persons with disabilities. See id. at ¶ 50. Plaintiffs assert that Bossier Max "is believed and, therefore alleged to receive federal funds." Id.

"Both the ADA and the [RA] require public entities—or private entities receiving federal funding—to provide reasonable accommodations to assist disabled person [sic] in accessing public programs and services." Borum v. Swisher Cnty., No. 14-127-J, 2014 WL 4814541, at *8 (N.D. Tex. Sept. 29, 2014). A successful prima facie case of discrimination under the ADA requires a plaintiff to prove the following:

> (1) that he is a qualified individual under the ADA; (2) that he is being excluded from participation in, or is being denied benefits, services, programs, or other activities for which a public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

Id. Additionally, the ADA "imposes on public entities an affirmative obligation to make reasonable accommodations for disabled individuals—including prisoners—who take advantage of a public entity's services or programs." Borum v. Swisher Cnty., No. 14-127-J, 2015 WL 327508, at *4 (N.D. Tex. Jan. 26, 2015). "This 'reasonable accommodation' theory of discrimination is different from, yet related to, the prima facie case of disability-based discrimination discussed above." Id. For example, "a plaintiff can satisfy the second

and third prongs of the prima facie case of disability discrimination by establishing that the public entity has failed to make reasonable accommodations for a disabled person who uses the services provided by the public entity." Id.

The RA "is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the [RA] applies to any federally funded programs and activities, whether public or private." Id. at *9. A court may analyze these types of claims together. See id. The Supreme Court has held:

> [C]onfinement in a jail is a program or service under the ADA and RA because "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and education and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be excluded from participation in)."

Borum, 2015 WL 327508, at *5 (quoting Pa. Dep't of Corr. v. Yeskey, 542 U.S. 206, 210, 118 S. Ct. 1952 (1998) (emphasis omitted)).

In the instant case, the Court finds that Plaintiffs have failed to plead a plausible claim under both the ADA and the RA. In their opposition, Plaintiffs reference the Department of Justice's Guidelines for Managing Substance Withdrawal in Jails; however, this reference is not mentioned once in their First Amended Complaint. See Record Documents 47 at 26 & 49 at 21. Furthermore, their allegations under the ADA and the RA mainly restate the same arguments made under their § 1983 inadequate medical care claim and Monell claim. Therefore, the Court agrees with the BBPJ and Sheriff Whittington that Plaintiffs confuse inadequate medical treatment with intentional disability discrimination.

20

McCoy was held at Bossier Max from March 3, 2024 until his death the morning of March 6, 2024, which equates to less than three days. McCoy was a detainee at Bossier Max, not an inmate. Plaintiffs' general and conclusory allegation that the BBPJ and Sheriff Whittington "fail[] to provide inmates with disabilities with basis reasonable accommodations to ensure equivalent access to all of the programs, activities, and services offered at the jail" is an insufficient legal conclusion. Record Document 27 at ¶ 36. Their assertion that the BBPJ and Sheriff Whittington "have executed systemic and willful discrimination" is another improper legal conclusion. Id. at ¶ 37. There is no sufficient factual evidence that anyone knew the depth of McCoy's alcohol withdrawal history while housed at Bossier Max for less than three days. Plaintiffs' claim that the BBPJ and Sheriff Whittington have an "affirmative obligation to create and maintain a system to identify and track individuals with disabilities and the accommodations they require…" is uncorroborated and conclusory. Id. at ¶ 43.

Significantly, Plaintiffs also misstate that the Nurse Defendants observed McCoy's rapid decline. See id. at ¶ 47. None of the Nurse Defendants were on duty throughout the night as McCoy's symptoms worsened. Plaintiffs' allegations on what should have been done are speculative and unsupported. Therefore, the BBPJ's Motion (Record Document 36) and Sheriff Whittington's Motion (Record Document 38), with respect to Plaintiffs' ADA and RA claims, are **GRANTED**. These claims are **DISMISSED WITH PREJUDICE**.

### (d) Amendment.

Federal Rule 15(a) "provides that 'leave to amend shall be freely given when justice so requires,' but only 'applies where plaintiffs "expressly requested" to amend.'"

U.S. ex rel. Jamison v. Del-Jen, Inc., 747 Fed. Appx. 216, 221 (5th Cir. 2018). Moreover, "a district court is justified in denying leave to amend when a plaintiff has 'fail[ed] to cure deficiencies by amendments previously allowed.'" Id. Here, the Court will not give Plaintiffs an opportunity to amend their First Amended Complaint.

On May 8, 2025, Magistrate Judge Hornsby stayed all discovery and allowed Plaintiffs until May 27, 2025 "to file an amended and restated complaint that pleads their best case with respect to the claims against the individual defendants (in anticipation of their qualified immunity defense) and with respect to any other claims, including those challenged by the [old] pending Rule 12 motions." Record Document 22 at 1–2. In May of 2025, Defendants had all filed Rule 12 motions to dismiss Plaintiffs' claims, which asserted similar arguments to the currently pending motions to dismiss. See Record Documents 9, 10, 11, & 14. These previously filed motions to dismiss were handled by a joint order entered by the undersigned; however, Plaintiffs were put on notice and cautioned that they needed to assert more specific allegations and anticipate the qualified immunity defense. See Record Documents 22 & 32.

Plaintiffs seek to amend their complaint once again to cure the same problems previously mentioned by this Court and Defendants. Even though they have alleged they can provide additional facts to support their arguments, these facts are uncorroborated should have been included in their First Amended Complaint. The Court find further amendment would be futile; therefore, Plaintiffs are not permitted to amend their First Amended Complaint.

**CONCLUSION**

For the reasons stated above,

The BBPJ's Motion (Record Document 36) and Sheriff Whittington's Motion (Record Document 38) are **GRANTED**. All claims asserted by Plaintiffs against the BBPJ and Sheriff Whittington are **DISMISSED WITH PREJUDICE**. Plaintiffs are not permitted to amend their First Amended Complaint.

An Order accompanying this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 25th day of August, 2025.

_____

UNITED STATES DISTRICT COURT JUDGE